```
         UNITED STATES DISTRICT COURT
      SOUTHERN DISTRICT OF WEST VIRGINIA
                 AT CHARLESTON
```

**BILMAR LIMITED PARTNERSHIP,**

      Plaintiff,

v.                                Civil Action No. 2:13-14391

**PRIMA MARKETING, LLC,**
**7-11, INC., and**
**DON WENTZ,**

      Defendants.

## MEMORANDUM OPINION AND ORDER

Pending is the motion to remand, filed by the plaintiff, Bilmar Limited Partnership ("Bilmar"), on July 8, 2013. Also pending is a motion to dismiss, filed by 7-11, Inc. ("7-Eleven") on June 21, 2013, and a second motion to dismiss, filed by Don Wentz ("Wentz") on August 28, 2013.

Before the court may consider the merits of the motions to dismiss, it must first resolve the jurisdictional question posed by the motion to remand. McCoy v. Norfolk S. Ry. Co., 858 F. Supp. 2d 639, 642 (S.D. W. Va. 2012); see also Mayes v. Rapoport, 198 F.3d 457, 460 (4th Cir. 1999) (observing that propriety of removal and fraudulent joinder are jurisdictional questions).

I. Factual and Procedural Background

The dispute in this case arises out of three commercial leases that were initially entered into by Bilmar and Prima Marketing, LLC ("Prima"), and then subsequently assigned to 7-Eleven. Bilmar, the lessor, is a West Virginia limited liability partnership. Compl. ¶ 1. Prima, the original lessee, is a Colorado limited liability company. Compl. ¶ 2. 7-Eleven, the assignee, is a Texas corporation with its principal place of business in Texas. Compl. ¶ 3; Notice of Removal ¶ 8. The individual defendant, Wentz, is an employee of Prima and a citizen of West Virginia. Compl. ¶ 4; Notice of Removal ¶¶ 13, 17.[1]

Bilmar leased three convenience store locations to Prima.[2] Compl. ¶ 6. According to Bilmar, the terms of the

---

[1] When analyzing motions to remand in situations, such as this one, where fraudulent joinder has been alleged, "the court is not bound by the allegations of the pleadings, but may instead consider the entire record, and determine the basis of joinder by any means available." AIDS Counseling & Testing Ctrs. v. Grp. W Television, Inc., 903 F.2d 1000, 1004 (4th Cir. 1990) (internal quotation marks and citation omitted).

[2] It is unclear when Bilmar and Prima entered into the initial leases covering the three convenience stores. Although the complaint pleads that "[a]ll of the terms and conditions of the Leases and their amendments are incorporated [in the complaint] as if each and every term [were] pled in full," the lease

leases required Prima to provide maintenance for all three properties, and Prima was also responsible for repairing any damage to the properties. Id. ¶ 12. The complaint asserts that Wentz was "in charge of maintenance, repairs, and upkeep" at the leased properties. Id. ¶¶ 4, 26.

At some point during the term of the leases, Prima and Wentz failed to perform the required maintenance and repairs. Id. ¶¶ 13-14. Specifically, Bilmar asserts that Wentz "failed to repair damage to the" leased properties, "failed to reasonably protect the store locations from damage," "failed to maintain the store premises[,] . . . and allowed the property to . . . become damaged," "failed to properly repair land slips, concrete damage, and store damage, thereby increasing the damage to the [p]laintiff," "negligently undertook repairs to the three store locations and enhanced the damage to the locations," "negligently oversaw" repairs, and "made faulty repairs to the [leased] premises[.]" Id. ¶ 27.

In June 2012, Prima sought to assign the leases to 7-Eleven. Id. ¶ 9. In exchange for Bilmar's consent to the

---

documents were not attached to the complaint, and the remainder of the complaint does not quote or discuss the contractual language in any detail.

assignments, Prima promised to make necessary repairs, see id. ¶¶ 15-16, and 7-Eleven promised to obtain insurance coverage for the properties listing Bilmar as an insured party, id. ¶¶ 23, 25. After approximately two months of negotiations, Bilmar agreed, and the leases were assigned to 7-Eleven on August 31, 2012. Id. ¶¶ 10-13.

Bilmar now claims that Prima did not carry out the promised repairs prior to the assignments, and also asserts that 7-Eleven has failed to perform the required maintenance since the assignments. Id. ¶ 22. Bilmar also alleges that 7-Eleven failed to obtain insurance listing Bilmar as an insured party, as it promised it would do during the assignment negotiations. See id. ¶¶ 23-25.

B.

Bilmar commenced this action in the Circuit Court of Kanawha County, West Virginia on May 13, 2013. Fairly construed, the complaint sets forth claims for breach of contract, fraud, civil conspiracy, and negligence. Specifically, Bilmar claims that: (1) Prima and 7-Eleven have

4

each breached the terms of the leases by failing to maintain and repair the leased properties; (2) Prima fraudulently induced Bilmar to agree to the assignments by promising to make repairs to the leased properties; (3) 7-Eleven fraudulently induced Bilmar to agree to the assignments by promising to obtain insurance for the leased properties listing Bilmar as an insured party; (4) Prima and 7-Eleven engaged in a civil conspiracy to fraudulently induce Bilmar to agree to the assignments; and (5) Wentz was negligent in making and overseeing repairs to the leased properties, and his negligence caused damage to the properties.  See Id. ¶¶ 13, 15, 16, 22-25, 27, 28.

On June 14, 2013, Prima and 7-Eleven removed the case to federal court, asserting fraudulent joinder of Wentz and invoking this court's diversity jurisdiction.  On July 8, 2013, Bilmar moved to remand on the ground that Prima and 7-Eleven failed to establish fraudulent joinder.


II.  Standard of Review


"A defendant may remove any action from a state court to a federal court if the action could have originally been

5

brought in federal court." <u>Yarnevic v. Brink's, Inc.</u>, 102 F.3d 753, 754 (4th Cir. 1996) (citing 28 U.S.C. § 1441).  Federal district courts have original jurisdiction over actions between citizens of different states in which the matter in controversy exceeds $75,000, exclusive of interest and costs.  28 U.S.C. § 1332(a)(1).

Since <u>Strawbridge v. Curtiss</u>, 7 U.S. (3 Cranch) 267 (1806), diversity jurisdiction has required "complete diversity" of citizenship between the parties, meaning that no party may share a common citizenship with an opposing party.  <u>Id.</u>  The doctrine of fraudulent joinder, however, permits a district court to "disregard, for jurisdictional purposes, the citizenship of certain nondiverse defendants, assume jurisdiction over a case, dismiss the nondiverse defendants, and thereby retain jurisdiction."  <u>Mayes v. Rapoport</u>, 198 F.3d 457, 461 (4th Cir. 1999).

Our court of appeals lays a "heavy burden" upon a defendant claiming fraudulent joinder:

> "In order to establish that a nondiverse defendant has been fraudulently joined, the removing party must establish either: [t]hat there is <u>no possibility</u> that the plaintiff would be able to establish a cause of action against the in-state defendant in state court; or [t]hat there has been outright fraud in the plaintiff's pleading of jurisdictional facts."

6

Id. at 464 (emphasis in original) (quoting Marshall v. Manville Sales Corp., 6 F.3d 229, 232 (4th Cir. 1993)). The applicable standard "is even more favorable to the plaintiff than the standard for ruling on a motion to dismiss[.]" Hartley v. CSX Transp., Inc., 187 F.3d 422, 424 (4th Cir. 1999). Indeed, "'the defendant must show that the plaintiff cannot establish a claim against the nondiverse defendant even after resolving all issues of fact and law in the plaintiff's favor.'" Mayes, 198 F.3d at 464 (quoting Marshall, 6 F.3d at 232–33).

Hartley demonstrates that fraudulent joinder claims are subject to a rather black-and-white analysis in this circuit. Any shades of gray are resolved in favor of remand. See Hartley, 187 F.3d at 425. At bottom, a plaintiff need only demonstrate a "glimmer of hope" in order to have his claims remanded:

> In all events, a jurisdictional inquiry is not the appropriate stage of litigation to resolve . . . various uncertain questions of law and fact. . . . Jurisdictional rules direct judicial traffic. They function to steer litigation to the proper forum with a minimum of preliminary fuss. The best way to advance this objective is to accept the parties joined on the face of the complaint unless joinder is clearly improper. To permit extensive litigation of the merits of a case while determining jurisdiction thwarts the purpose of jurisdictional rules.
>
> * * * *
>
> We cannot predict with certainty how a state court and

7

> state jury would resolve the legal issues and weigh the factual evidence in this case. [Plaintiff's] claims may not succeed ultimately, but ultimate success is not required . . . . Rather, there need be only a slight possibility of a right to relief. Once the court identifies this glimmer of hope for the plaintiff, the jurisdictional inquiry ends.

Id. at 425-26 (citations omitted).

III. Discussion

Bilmar does not dispute that the amount in controversy is greater than $75,000. Rather, Bilmar argues that Prima and 7-Eleven have failed to demonstrate that Wentz was fraudulently joined, and that complete diversity of citizenship accordingly does not exist. Prima and 7-Eleven do not allege any actual fraud in the pleadings,[3] so the relevant question for fraudulent

---

[3] Though they stop short of asserting actual fraud, Prima and 7-Eleven do claim that Bilmar has "no real intention to obtain a [] judgment" against Wentz and joined him for purely tactical reasons, as evidenced by Bilmar's initial failure to serve Wentz for more than sixty days after filing the complaint. Defs.' Opp'n at 6. They cite Carter v. Hitachi Koki U.S.A., Ltd., 445 F. Supp. 2d 597 (E.D. Va. 2006), for the proposition that such a failure to serve a party can be evidence of fraudulent joinder. Unlike this case, however, the plaintiff in Carter failed to serve a nondiverse defendant for nearly one year after initiating the action; and evidence in the record clearly demonstrated that the nondiverse defendant was not involved in the case, and therefore not a proper defendant. Id. at 601 ("The only witness . . . who can prove plaintiff's case has

8

joinder purposes is whether Bilmar has any possibility of recovery in state court against the nondiverse defendant, Wentz.

Bilmar asserts that Wentz may be held liable for negligence because he was "in charge of maintenance, repairs, and upkeep," Compl. ¶¶ 4, 26; and, among other failures, "failed to properly repair land slips, concrete damage, and store damage, thereby increasing the damage to the [p]laintiff," and "negligently undertook repairs to the three store locations and enhanced the damage to the locations," id. ¶ 27. Bilmar thus alleges that Wentz's actions caused damage to the properties or, as noted, enhanced existing damage. Id. Bilmar seeks to recover the cost of repairing the properties as well as punitive damages. See id. at Prayer for Relief.

A.

Under West Virginia law, "[t]o prevail in a negligence suit, the plaintiff must prove by a preponderance of the evidence that the defendant owed a legal duty to the plaintiff and that by breaching that duty the defendant proximately caused

---

testified unequivocally by affidavit that [the nondiverse defendant] did not sell the allegedly defective product.").

9

the injuries of the plaintiff." Strahin v. Cleavenger, 603 S.E.2d 197, 205 (W. Va. 2004) (citing Webb v. Brown & Williamson Tobacco Co., 2 S.E.2d 898, 899 (W. Va. 1939)). In considering the claim of fraudulent joinder, the court must determine whether the plaintiff has a "glimmer of hope" of demonstrating those four elements of duty, breach, causation, and damages. The parties focus their dispute on whether Wentz owed any duty to Bilmar, and thus whether Bilmar can maintain an action for negligence against Wentz.

B.

"No action for negligence will lie without a duty broken," Syl. Pt. 1, Parsley v. Gen. Motors Acceptance Corp., 280 S.E.2d 703 (W. Va. 1981), and whether a duty exists under a given set of facts is a complex legal question for the court, rather than a jury, to decide, Aikens v. Debow, 541 S.E.2d 576, 580 (W. Va. 2000). In making that determination, courts in West Virginia begin from the basic premise that all persons in an organized society are required to exercise reasonable care to prevent injury to others as a result of their conduct. See Robertson v. LeMaster, 301 S.E.2d 563, 566-67 (W. Va. 1983).

"However, in order to form the basis for a valid cause of action, [that general] duty must be brought home to the particular plaintiff, for a duty owing to everbody can never become the foundation of an action . . . ." Id. at 567 (internal quotation marks omitted); see also Aikens, 541 S.E.2d at 583 (discussing the need to draw a line between providing a remedy to the injured and creating unbounded exposure to tort liability).

To define proper limits on the scope of duty, courts in West Virginia primarily consider whether it was foreseeable that the defendant's conduct would lead to the harm suffered by the plaintiff. Roberston, 301 S.E.2d at 568. As the Supreme Court of Appeals explained in Aikens:

> The ultimate test of the existence of a duty to use care is found in the foreseeability that harm may result if it is not exercised. The test is, would the ordinary man in the defendant's position, knowing what he knew or should have known, anticipate that harm of the general nature of that suffered was likely to result?

541 S.E.2d at 581 (quoting Sewell v. Gregory, 371 S.E.2d 82 (W. Va. 1988)). In addition to foreseeability, courts also consider "policy considerations underlying the core issue of the scope of the legal system's protection," such as "the likelihood of injury, the magnitude of the burden of guarding against it, and

11

the consequences of placing that burden on the defendant." Id. (citing Robertson, 301 S.E.2d at 568).

In other words, because "negligence in the air, so to speak, will not do," Palsgraf v. Long Island R. Co., 248 N.E. 99, 99 (N.Y. 1928) (internal quotation marks omitted), courts ground the duty inquiry by asking whether, under certain circumstances, it is proper to impose liability: (1) because the defendant knew or should have known that his actions would result in harm to a particular class of plaintiffs; or (2) because as a matter of policy the nature of the risk dictates that it should be borne by the defendant rather than the plaintiff.

The defendants offer two arguments why Wentz owed no duty to Bilmar in this case.

1.

Prima and 7-Eleven first argue that, to the extent Wentz owed a duty to repair and maintain the leased properties, he owed that duty to his employer, Prima, and not to the

12

plaintiff, Bilmar. Defs.' Opp'n at 5 ("Wentz was merely an employee of Prima and, thus, had no duty to [Bilmar]."). For its part, Bilmar maintains that Wentz "is not immune from tort liability . . . simply because he was an employee of Prima." Pl.'s Mot. Remand at 5.

Under West Virginia law, employees are not shielded from individual liability simply because they commit a tort while acting within the scope of their employment. See, e.g., Syl. Pt. 3, Barath v. Performance Trucking Co., Inc., 424 S.E.2d 602, 602 (W. Va. 1992) ("An agent or employee can be held personally liable for his own torts against third parties and this personal liability is independent of his agency or employee relationship."); Syl. Pt. 3, Musgrove v. Hickory Inn, Inc., 281 S.E.2d 499, 501 (W. Va. 1981) (same). Applying this doctrine, this court has held that employees accused of negligently carrying out their employment duties are not fraudulently joined, as long as the other elements of prima facie negligence are at least arguably present. McKean v. Wal-Mart Stores, Inc., No. 05-176, 2005 WL 1785260, at *3 (S.D. W. Va. July 26, 2005) (holding that nondiverse warehouse manager was not fraudulently joined where employee had a duty to inspect door which injured plaintiff). Accordingly, the fact that Wentz was acting as an employee of Prima at the time that he allegedly carried out

13

negligent and faulty work on the leased properties does not necessarily absolve him of individual tort liability.

2.

Next, Prima and 7-Eleven argue that Wentz did not owe Bilmar a common law duty to exercise reasonable care because "Wentz never held himself out to [Bilmar], and [Bilmar] never hired [Wentz] to render services." Defs.' OPpp'n at 5. In effect, the defendants argue that Bilmar, as a third party, was too remote from Wentz for any duty to exist between them. Bilmar counters that Wentz did owe a duty to exercise reasonable care and skill when carrying out his employment duties because it was foreseeable that the properties would be damaged if he failed to do so.

As an initial matter, whether Bilmar hired Wentz, or whether Bilmar and Wentz technically consummated a contract for services, is irrelevant. See Syl. Pt. 2, Sewell v. Gregory, 371 S.E.2d 82, 83 (W. Va. 1988)("In the matters of negligence, liability attaches to a wrongdoer, not because of a breach of a contractual relationship, but because of a breach of duty which

14

results in an injury to others."). The proper inquiry, outlined above, is to ask whether considerations of foreseeability and public policy weigh in favor of, or against, imposing a duty in this context. See Bragg v. United States, 741 S.E.2d 90, 99-100 (W. Va. 2013).

In Bragg, the Supreme Court of Appeals recently considered the circumstances under which West Virginia law will impose a duty between a defendant and a third-party plaintiff. In that case, the court held that a safety inspector "owes a duty of care to the employees whose safety the inspection is intended to secure," because "it is foreseeable that harm is likely to come to such employees if a safety inspection is negligently performed." 741 S.E.2d at 100. The court also concluded that public policy weighed in favor of imposing a third-party duty, because "[t]he burden upon the inspector is merely to perform his or her duties with" ordinary skill, care, and diligence. Id. In reaching its decision, the court relied in part upon Sewell v. Gregory, a case cited by Bilmar, which held that home builders owe a duty of care to subsequent, third-party homeowners. 371 S.E.2d at 85 ("[A] builder is under a common law duty to exercise reasonable care and skill in the construction of a building . . . [and a] subsequent homeowner can maintain an action against a builder for negligence

15

resulting in latent defects which the subsequent purchaser was unable to discover prior to purchase.") (internal quotation marks and citation omitted). In that case, not unlike Bragg, it was foreseeable that the negligent construction of a building could harm immediate as well as subsequent homeowners. Id. And while that case did not explicitly consider public policy, implicit in its holding is the notion that homebuyers who are not aware of latent structural flaws at the time of purchase should not bear the burden of guarding against the resultant harms that could have more easily been avoided if the builder exercised reasonable care and skill in the first instance.

As in Bragg and Sewell, the elements of foreseeability and public policy both weigh in favor of implying a duty between Bilmar and Wentz in this case. First, it is foreseeable that negligent and faulty repairs to a property will cause harm to the possessor or owner of the property, and Sewell demonstrates that the duty to avoid causing such harms exists even if the workman does not know with certainty the identity of the party who will be injured. Second, Sewell and, in a general sense, Bragg, show that public policy weighs in favor of requiring workers like Wentz to carry out their ordinary duties with diligence, care and skill so as not to damage the property on

16

which they are working, rather than requiring third parties such as Bilmar to insure against the possibility that they will not.

Accordingly, although the Supreme Court of Appeals has not spoken to the precise question at issue here, the fact that it has recognized a duty in the circumstances presented in <u>Bragg</u> and <u>Sewell</u> suggests that Wentz owed a duty to Bilmar to exercise diligence, care and skill when repairing the leased premises so as to avoid damaging those premises. Inasmuch as the court, with respect to the remand issue, is required to resolve open legal questions in Bilmar's favor, the element of duty is satisfied.

C.

While the parties do not devote their attention to the remaining elements of breach, causation, and damages, the court will briefly consider them. Bilmar has pled that Wentz, <u>inter alia</u>, "failed to properly repair land slips, concrete damage, and store damage, thereby increasing the damage to the [p]laintiff," and "negligently undertook repairs to the three store locations and enhanced the damage to the locations," Compl. ¶ 27; and, as noted, that these actions caused damage to

17

the properties and enhanced existing damage, id. Bilmar seeks to recover the cost of repairing the properties as well as punitive damages. See id. at Prayer for Relief.

Though sparse, these pleadings allege the remaining elements of a negligence claim. While such "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, [may] not suffice" to survive a motion to dismiss under Federal Rule of Civil Procedure Rule 12(b)(6), Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009), the standard for fraudulent joinder is "more favorable to the plaintiff than the standard for ruling on a motion to dismiss," Hartley v. CSX Transp., Inc., 187 F.3d 422, 424 (4th Cir. 1999). Moreover, courts in West Virginia adhere to a more lenient standard for appraising the sufficiency of a complaint. As the Supreme Court of Appeals recently reiterated:

> [T]he purpose of a motion under [West Virginia] Rule 12(b)(6) is to test the formal sufficiency of the complaint. The trial court, in appraising the sufficiency of a complaint . . . should not dismiss the complaint unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief. Dismissal for failure to state a claim is proper where it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations.

Mey v. Pep Boys-Manny, Moe & Jack, 717 S.E.2d 235, 239 (W. Va. 2011) (internal quotation marks and citations omitted). Under

18

this more forgiving standard, and resolving factual issues in Bilmar's favor, the court cannot conclude that "it is clear that no relief could be granted under any set of facts" consistent with Bilmar's allegations.

Finally, the court is mindful that, in the fraudulent joinder context, it is the party invoking federal jurisdiction that bears the burden of demonstrating "that the plaintiff cannot establish a claim against the nondiverse defendant even after resolving all issues of fact and law in the plaintiff's favor." Mayes v. Rapoport, 198 F.3d 457, 464 (4th Cir. 1999) (internal quotation marks omitted). In light of the fact that the defendants have failed to challenge any element of the negligence claim apart from the existence of duty, they have failed to demonstrate that Bilmar cannot establish a claim against Wentz.

IV. Conclusion

The court ORDERS that plaintiff's motion to remand be, and it hereby is, granted. The court further ORDERS that this action be, and it hereby is, remanded to the Circuit Court of

Kanawha County for all further proceedings. In view of this disposition, the court need not address the remaining motions.

The Clerk is directed to forward a copy of this memorandum opinion and order to counsel of record and a certified copy to the clerk of the court for the Circuit Court of Kanawha County.

DATED: November 27, 2013

John T. Copenhaver, Jr.
United States District Judge